UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandra J. Claussen,                          Civil No. 10-4258 (JNE/FLN)

　　　　　Plaintiff,

　　　v.                                      **REPORT AND RECOMMENDATION**

Michael J. Astrue,
Commissioner of Social Security,

　　　　　Defendant.

_____

Charles E. Binder for Plaintiff.
Lonnie F. Bryan, Assistant United States Attorney, for Defendant.
_____

　　　　　Plaintiff Sandra Claussen seeks a judicial review of the final decision of the

Commissioner of Social Security ("Commissioner"), who denied her application for disability

insurance benefits. The matter has been referred to the undersigned United States Magistrate

Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the

claim pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary

judgment. (ECF Nos. 6 and 9.) For the reasons set forth below, the Court recommends that the

Commissioner's decision be **AFFIRMED** and this case be **DISMISSED with prejudice**.

## I.　INTRODUCTION

　　　　　The issue on appeal before this Court is whether Ms. Claussen is entitled to disability

benefits beginning on July 20, 2005.

Ms. Claussen filed an application for disability benefits on July 17, 2007, alleging disability as of July 20, 2005. (Administrative Record [hereinafter "R."] 125, ECF No. 5.) The Social Security Administration ("SSA") initially denied her application on September 19, 2007, stating that Ms. Claussen's condition was not severe enough to keep her from working her past job as a kitchen administrator. (R. 62.) Upon reconsideration, her application was again denied on April 07, 2008. (R. 64.)

Pursuant to an administrative hearing on December 30, 2009, the Administrative Law Judge, Mary M. Kunz ("ALJ") concluded that Ms. Claussen was not disabled, within the meaning of the Social Security Act, from July 20, 2005, through the date of the decision. (R. 17-18.) The ALJ based her decision on her finding that Ms. Claussen's subjective complaints regarding the severity of her symptoms were not entirely credible and that her treating physician's opinion relied quite heavily on these same subjective complaints. (R. 16-17.) The ALJ ultimately decided that Ms. Claussen had the residual functional capacity ("RFC") to perform her previous work as a kitchen administrator. (R. 17.)

On August 16, 2010, the Appeals Council denied Ms. Claussen's request for review, rendering the ALJ's decision final for purposes of judicial review. (R. 1-5); see 20 C.F.R. § 404.981. Ms. Claussen commenced this civil action on October 15, 2010, pursuant to 42 U.S.C. §§ 205(g), and 405(g) of the Social Security Act. (ECF No. 1.) The Commissioner filed his Answer on February 8, 2011. (ECF No. 4.) Ms. Claussen and the Commissioner have both moved for summary judgment. (ECF Nos. 6, 9.)

## II.   STATEMENT OF FACTS

### A.  Background

Ms. Claussen was born on July 29, 1949. (R. 125.) She was 57 years old when she filed an application for Disability Insurance Benefits on July 17, 2007. *Id*. She was 60 years old at the time of the administrative hearing before the ALJ on December 30, 2009. (R. 25.) Ms. Claussen claims the date she was first unable to work was July 20, 2005, and that she should be awarded disability benefits from that date onward. (R. 145.) Ms. Claussen suffers from rheumatoid arthritis, osteoarthritis, and possible fibromyalgia. (R. 63, 386, 559.) She completed school through the eleventh grade and has the equivalent of a high school education. (R. 49, 149.) She has past relevant work experience in the restaurant and catering business as a kitchen administrator. (R. 146.)  Ms. Claussen claims that beginning on July 20, 2005, she could no longer perform her job duties because she had little energy and severe pain in the arms, hands, feet, and legs. (R. 145.)

### B.  Medical Evidence - Physical Impairments

Ms. Claussen was first diagnosed with rheumatoid arthritis by Dr. Daniel Hathaway in February of 2003. (R. 440.) Since then, her arthritis has largely been controlled through treatments of Remicade injections and methotrexate. (R. 275-85.) Though the record does not indicate a precise examination identifying positive tender points, Ms. Claussen has been diagnosed with fibromyalgia as well. (R. 440-41, 485-89.) An MRI of the lumbar spine on October 22, 2009 found mild dextroscoliosis of the lumbar spine, osteophyte protrusion at L2-L3 and L4, and mild narrowing of the L4-L5 and L5-S1 disc spaces. (R. 559.) In addition, Ms. Claussen suffers from slight degenerative changes in the left knee. (R. 495.)

3

### 1.   Daniel Hathaway, M.D. – Treating Physician

On August 23, 2004, Ms. Claussen was diagnosed with rheumatoid arthritis with persistent activity in the metatarsophalangeal[1] joints (MTPs) by Dr. Daniel Hathaway. (R. 287.) In addition, Ms. Claussen complained of pain in her lower back, left shoulder, and swelling in her hands. *Id*. Dr. Hathaway did not find any swelling in the upper extremities, nor swollen knees or ankles, but he did note swelling in the right 2nd and 4th and left 2nd, 3rd, 4th, and 5th MTPs. *Id*. Dr. Hathaway suggested that Ms. Claussen contact her insurance provider to determine if she was eligible for Remicade or Humira treatment of her rheumatoid arthritis. *Id*.

In January of 2005, following four infusions of Remicade, Ms. Claussen again visited Dr. Hathaway who indicated that he "did not find much of anything." (R. 285.) He noted that though Ms. Claussen felt "achy" and "wiped out" all over, she no longer was describing "swollen, red or warm joints." *Id*. Dr. Hathaway indicated that her high arches and hammertoes might contribute to continuing reported pain in the MTPs, but attributed her aches, pains and fatigue to sleep abnormalities or depression rather than rheumatoid arthritis. *Id*.

On June 6, 2005, Dr. Hathaway examined Ms. Claussen. (R. 282.) He noted that medical findings suggested myofascial[2] pain. *Id*. He also noted swelling in the right 3rd, 5th proximal interphalangeal[3] joints (PIPs), left 2nd metacarpal[4] bone (MCP), right wrist, bilaterally in the

---

[1] Pertaining to the metatarsus and the phalanges of the toes. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1022 (28th ed. 1994).

[2] Pertaining to or involving the fascia surrounding and associated with muscle tissue. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1092 (28th ed. 1994).

[3] The synovial joints between the proximal and middle phalanges of the fingers and of the toes. *Proximal Interphalangeal Joints – Medical Definition*, MEDILEXICON, http://www.medilexicon.com/medicaldictionary.php?t=46423 (last visited Dec. 2, 2011).

MTPs, and a "definite worsening of her arthritis." (R. 283.) In response, he increased her dosage of Remicade. *Id*.

Dr. Hathaway again saw Ms. Claussen on August 29, 2005. (R. 281.) Though Ms. Claussen was unsure whether the increased dosage of Remicade had made any difference, Dr. Hathaway noted she was "significantly better" and that there "really aren't swollen joints today." *Id*. Nonetheless, he shortened her interval between Remicade treatments. *Id*.

In a December 2005 visit, Ms. Claussen continued to make complaints consistent with osteoarthritis and fibromyalgia. (R. 492.) Dr. Hathaway noted that Ms. Claussen had "no swollen joints" and that her rheumatoid arthritis was stable. (R. 493.) He recommended regular exercise and pool therapy. *Id*.

On June 19, 2006, Dr. Hathaway again found no swelling in the joints and diagnosed clinically stable rheumatoid arthritis. (R. 287.) Dr. Hathaway made similar findings during visits in January and July of 2007. (R. 275, 277.)

During Ms. Claussen's next visit on November 2, 2007, Dr. Hathaway did not find any swelling in the small hand joints. (R. 398.) He noted triggering of the left thumb and swelling the right 2 and 3 MTP joints. *Id*. He diagnosed Ms. Claussen with fibromyalgia and somewhat more active rheumatoid arthritis. *Id.* He again increased the Remicade dosage. *Id*.

In March of 2008, Dr. Hathaway again noted the absence of swollen joints or tendons in either the upper or lower extremities. (R. 386.) Ms. Claussen continued to complain of aches and pain in the hands and feet, but he indicated that these seemed to be related to fibromyalgia. *Id*.

---

[4]Pertaining to the part of the hand between the wrist and fingers. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1020 (28th ed. 1994).

He diagnosed her with rheumatoid arthritis that was under control, fibromyalgia, and hammertoes with metatarsalgia.[5] *Id.*

Ms. Claussen next visited Dr. Hathaway on September 8, 2008, and April 3, 2009. (R. 485-86.) Upon each of these visits, Dr. Hathaway diagnosed her with stable rheumatoid arthritis and fibromyalgia. (R. 485, 487.) During the September visit, Dr. Hathaway noted a small effusion in the right knee, but doubted that it was inflammatory. (R. 487.)

During the April 3, 2009 visit, Dr. Hathaway completed a rheumatoid arthritis impairment questionnaire. (R. 440.) In the questionnaire, he noted Ms. Claussen had been diagnosed with fibromyalgia and rheumatoid arthritis. *Id.* Based on these findings, he completed a residual functional capacity assessment of Ms. Claussen. *Id.* In the assessment, he opined that she could neither sit nor stand/walk for more than three hours in an eight hour workday. (R. 443.) Furthermore, he indicated that she would likely be absent from work more than three times a month. (R. 445.)

On October 22, 2009, Ms. Claussen reported lower leg pain with walking and standing. (R. 556.) An MRI was ordered to rule out spinal stenosis. *Id.* Dr. Hathaway also indicated that Ms. Claussen's rheumatoid arthritis was under "excellent control" and the he had not seen swollen joints for quite a few years. *Id.* He noted that Ms. Claussen continued to complain of diffuse aches and pains, but attributed them to depression and fibromyalgia. *Id.* Dr. Hathaway did not prescribe any drugs to treat fibromyalgia because the rheumatologic drugs that he could

---

[5] A condition marked by pain and inflammation in the ball of the foot. *Metatarsalgia*, MAYO CLINIC, http://www.mayoclinic.com/health/metatarsalgia/DS00496 (last visited Dec. 2, 2011).

prescribe would be ineffective. *Id.* He therefore left prescribing drugs for the treatment of fibromyalgia to Ms. Claussen's primary care, psychiatry, or pain management doctors. *Id.*

### 2.  Charles Dunham, M.D. – Primary Care Physician

On July 27, 2004 Dr. Charles Dunham evaluated Ms. Claussen. (R. 262.) He noted that she felt fatigued and was having trouble adjusting to rheumatoid arthritis. Id. He also requested an MRI of her left shoulder because she complained of trouble with her left rotator cuff. *Id.*

An MRI taken on August 4, 2004 revealed tendinopathy within the supraspinatus tendon with probable small focus of intrasubstance tearing anteriorly. (R. 270.) There was no good evidence for a full-thickness rotator cuff tendon tear. *Id.*

During her next visit with Dr. Dunham on December 23, 2004, Ms. Claussen continued to complain of rotator cuff pain. (R. 257.) Dr. Dunham suggested waiting to see if the new Remicade injections helped her discomfort. *Id.*

On March 24, 2005, Ms. Claussen again saw Dr. Dunham. (R. 255.) She again complained of significant episodic pain and wondered whether she, like her sister, had fibromyalgia. *Id.* Dr. Dunham tested Ms. Claussen's trigger points for signs of fibromyalgia and found only one borderline positive response in the left occipital. *Id.* He diagnosed her with ongoing rheumatoid arthritis and mild depression and doubtful fibromyalgia. *Id.*

At the next visit, on October 19, 2005, Ms. Claussen complained of insomnia and myalgias associated with her rheumatoid arthritis. (R. 253.)

### 3.  Kenneth Koch, M.D. – Primary Care Physician

On October 23, 2007, Ms. Claussen visited Dr. Kenneth Koch, a primary care physician, complaining of fatigue and aching in her joints. (R. 320.) Dr. Koch diagnosed her with

7

hyperlipemia and fibromyalgia and referred her to pool therapy. (R. 320-21.) She again visited with Dr. Koch on October 7, 2008 reporting sleep disturbances, waking up frequently at night due to arthritis pain, and increasing worry and stress over her husband's health. (R. 457.) Dr. Koch diagnosed her this time with hyperlipemia and anxiety disorder. (R. 458.)

### 4.   Gregory H. Salmi, M.D. – State Agency Assessment Physician

The state agency medical consultant, Dr. Greg Salmi, completed a Request for State Agency Consultant Advice on March 24, 2008. (R. 409.) Dr. Salmi diagnosed Ms. Claussen with rheumatoid arthritis and chronic obstructive pulmonary disease. (R. 410.) He then completed a physical RFC assessment and concluded that Ms. Claussen could lift and/or carry 20 pounds occasionally, ten pounds frequently, and stand or walk for up to six hours. (R. 411.) He also found that Ms. Claussen could sit for up to six hours, had limited use of hand and foot controls, but could occasionally climb, balance, stoop, kneel, crouch, or crawl. (R. 411-12.) Other than avoiding power gripping with her hands, Dr. Salmi found no manipulative, visual, environmental, or communicative limitations. (R. 414.) Dr. Salmi based these findings upon the Ms. Claussen's lengthy history of rheumatoid arthritis and the subsequent effective treatment, examinations showing minimal joint swelling and triggering in the right 2nd and 3rd MTPs, and alleged aching in the hands and feet possibly caused by fibromyalgia. (R. 411.)

### C.  Medical Evidence - Mental Impairments

In March of 2008, Ms. Claussen was diagnosed with adjustment disorder with depressed mood. (R. 405.) On multiple visits, both her rheumatologist and primary care physician diagnosed her with some form of mild depression. (R. 255, 285, 444.) As of the ALJ hearing, she had not received treatment for mental health. (R. 36, 404.)

Dr. Charme Davidson, Ph.D., a Social Security Administration consultative psychologist, evaluated Ms. Claussen for the Social Security Administration on March 19, 2008. (R. 404.) During the examination, Ms. Claussen reported that she had become more withdrawn since she stopped working, feeling sad about her physical limitations, and worried about a future that she feels she can no longer control given her physical limitations. *Id.* Dr. Davidson diagnosed her with adjustment disorder and depressed mood secondary to her limitations because of her rheumatoid arthritis and fibromyalgia. (R. 405.) From a mental health standpoint, Dr. Davidson determined that Ms. Claussen could manage the stress and pressure of an entry-level workplace. (R. 406.) Ultimately, her mental health prognosis was good. *Id.*

### D.  Claimant's Testimony

On December 30, 2009, Ms. Claussen appeared before the ALJ and testified regarding her background, conditions and limitations. (R. 23.) She testified that she worked for twenty years in a restaurant jointly owned with her husband, but now only helps occasionally with the bills. (R. 28.) While working at the restaurant, she ran the kitchen staff and servers, did scheduling, cooked the specials, managed the catering, and did some payroll management. (R. 29-30.) She testified that in 2005 she began working less and less because she was making a lot of mistakes and physically couldn't handle her duties. (R. 30.) Her fibromyalgia, rheumatoid arthritis, and anxiety prevent her from working. (R. 36.)

She testified that she can no longer walk more than a block before her ankles and toes begin to hurt and her knees and hip joints start to bother her. (R. 31.) Similarly, she testified that she was incapable of standing for more than a half hour or forty-five minutes before her joints again begin to bother her. *Id.* She also testified to requiring help getting up after sitting for more

than an hour. (R. 32.) Regarding problems with her hands and fingers, she testified to being able to write, but no longer being able to bowl or embroider. (R. 32-33.) She stated that she was able to lift her 35 pound granddaughter, but not all day. (R. 34.) She also, however, reported difficulty holding and lifting gallon milk jugs and half-gallon cartons of orange juice. (R. 43-44.)

Ms. Claussen testified to increasingly anxious feelings during the last year of her work and continuing to experience episodes of frustration and anger at not being able to do simple physical tasks like lifting a stack of kitchen pans. (R. 34-35.) She was diagnosed with depression, but when asked by the ALJ if she had ever sought help from a therapist or psychiatrist, she responded that though her doctors had suggested it, she had never pursued this form of treatment. (R. 36.)

Though she continues to prepare meals, she stated that she no longer cooks like she used to and makes mostly lighter meals like crockpots, grilled cheeses, and soups. (R. 37.) She testified to no longer having the concentration necessary to read. (R. 36.) She regularly visits her mother who lives about ten blocks away. (R. 39.)

### E.  Third-Party Statements

On October 10, 2007, Ms. Claussen's husband, Roger Claussen, completed a Social Security Administration Third Party Function Report. (R. 163.) Mr. Claussen reported that Ms. Claussen gets out of the house every day. (R. 166.) She regularly cooks meals, occasionally babysits, and sometimes does laundry and cleaning. (R. 163-67.) He further reported that she goes grocery and clothes shopping every week for approximately two hours. (R. 166.)

### F.  Vocational Expert's Testimony

Mr. Bill Rutenbeck testified at the December 30, 2009 administrative hearing as a vocational expert. (R. 47.) The ALJ posed two hypothetical questions for Mr. Rutenbeck to consider. (R. 50-51.) For the purposes of the hypotheticals, the ALJ asked Mr. Rutenbeck to consider an individual, 60 years old, with the equivalent of a high school education and experience as a kitchen administrator. (R. 49.) The individual is impaired by what has been diagnosed as rheumatoid arthritis and fibromyalgia. (R. 50.) There is also recent evidence of mild osteoarthritic changes in the knees and mental impairments which have been referred to as anxiety disorder, depression, and an adjustment disorder. *Id*.

The first hypothetical assumed a person capable of light work with some limitations due to impairments. *Id*. This person can lift 20 pounds occasionally and ten pounds frequently. *Id*. This person can stand or walk for six hours a day and sit the remaining two in an eight hour workday. *Id*. This person is restricted from exposure to temperature extremes in excess of 90 degrees or below 32 degrees Fahrenheit. *Id*.

Mr. Rutenbeck testified that a person with these hypothetical limitations could perform the kitchen administrator work that Ms. Claussen had previously done. *Id*. Mr. Rutenbeck also testified that an individual with Ms. Claussen's work experience and physical limitations was also capable and had transferrable skills for more sedentary work such as a payroll clerk or order clerk. (R. 51.)

The ALJ then posed a revised hypothetical question. *Id*. The ALJ asked Mr. Rutenbeck to consider an individual who was likely to miss work three times a month in addition to the aforementioned limitations. *Id*. Mr. Rutenbeck testified that an individual with those limitations

could not perform any of the jobs mentioned – kitchen administrator, payroll clerk or order clerk – and was not suitable for any other competitive work. *Id.*

The claimant then posed three hypotheticals to Mr. Rutenbeck. (R. 54-57.) The first hypothetical assumed limitations first described by the ALJ, with added limitations on the upper extremities. (R. 54.) In this case, the individual could only occasionally use their upper extremities for reaching, handling, and fingering. *Id.* Mr. Rutenbeck testified that the individual in this scenario would be precluded from doing Ms. Claussen's past relevant work as well as that of a payroll or order clerk. *Id.*

The second hypothetical again presented an individual with the additional limitation of needing to be reminded of tasks more than three times a day. (R. 55.) Mr. Rutenbeck testified that such an individual would not be suited for the semiskilled jobs previously considered because they require attention and focus. *Id.*

The last hypothetical presented by Ms. Claussen described a situation where an individual had to take unscheduled ten minute breaks each hour. (R. 56-57.) Mr. Rutenbeck testified that this additional limitation would preclude the individual's ability to do any form of relevant work. (R. 57.)

**G.  The ALJ's Decision**

To determine whether Ms. Claussen was disabled, the ALJ followed the five-step sequential process established by the Social Security Administration (SSA), outlined at 20 C.F.R. § 404.1520. At the first step of the analysis, the ALJ determined whether Ms. Claussen engaged in any substantial gainful activity since the alleged onset date of her disability, July 20, 2005. (R.

11.) The ALJ determined that Ms. Claussen had not engaged in substantial gainful activity per 20 C.F.R. § 404.1520(b) since the alleged onset date of her disability. *Id.*

The second step in the sequential evaluation is to determine whether the claimant had a severe impairment, defined as a medically determinable impairment or combination of impairments that significantly limits the individual's physical or mental ability to meet the basic demands of work activity. 20 C.F.R. § 404.1520(c). The ALJ found that Ms. Claussen had the following severe impairments: "rheumatoid arthritis versus inflammatory polyarthritis, osteoarthritis, possible fibromyalgia, and slight degenerative changes in the knees." (R. 11.)

As part of the second step, the ALJ considered whether the claimant's medically determinable mental impairments were severe under the four broad functional areas set out in section 12.00C of the Listing of Impairments per 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 12.) The ALJ found Ms. Claussen's medically determinable mental impairments of anxiety disorder and adjustment disorder were non-severe because the impairments caused no more than "mild" limitations in her daily activities, social functioning, and concentration. (R. 13.)

The third step in the analysis requires a comparison of the claimant's severe impairments with the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments. (R. 14.) The ALJ concluded that Ms. Claussen's impairments, alone or in combination, did not meet the medical equivalent of severity for any of the listed impairments. *Id.* The claimant's impairment of inflammatory arthritis did not meet the listing because there were no documented findings of persistent inflammation of any joint. *Id.*

At the fourth step in the evaluative process, the ALJ must determine whether the claimant has a residual functional capacity ("RFC") that allows her to perform her past relevant work, or

13

any other jobs that exist in significant numbers in the national economy. (R. 14.) In evaluating Ms. Claussen's RFC, the ALJ considered all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.* Other evidence included opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and the credibility of the claimant's testimony and subjective complaints in accordance with 20 C.F.R. § 404.1529(c). *Id.* The ALJ considered the medical record, Ms. Claussen's daily activities, her work history, and the opinions of Dr. Hathaway, Dr. Davidson, and Dr. Salmi. (R. 14-17.)

The ALJ found that Ms. Claussen's medically determinable impairments of rheumatoid arthritis and anxiety disorder could reasonably be expected to cause the alleged symptoms. (R. 15.) The ALJ, however, also found that the objective evidence was not consistent with the claimant's allegations of ongoing limitations due to impairments. *Id.* The ALJ noted that the claimant had not had any swollen joints for a long time and that Dr. Hathaway, her rheumatologist, had indicated that the rheumatoid arthritis was under excellent control. (R. 15-16.) The ALJ further noted that Ms. Claussen's allegedly disabling mental impairments were apparently never severe enough for referral for specialized treatment from a mental health practitioner. (R. 16.) The ALJ further suggested that Ms. Claussen's presentation of symptoms may have been influenced by a belief, as she related to Dr. Hathaway, that getting disability on the basis of depression was more likely to be successful than based on fibromyalgia. *Id.*

The opinion of Dr. Hathaway, as given in the rheumatoid arthritis impairment questionnaire, was given little probative weight because it was generally inconsistent with his own treatment notes regarding Ms. Claussen's impairments. *Id.* The ALJ found that in

14

completing the form, Dr. Hathaway relied heavily upon Ms. Claussen's own subjective complaints of pain: complaints which had already been discounted by the ALJ's credibility determination of the claimant. (R. 17.)

The opinion of the consultative examiner, Dr. Davidson, was given little probative weight because there were no indications either in the report, or in Ms. Claussen's testimony that she had difficulty in getting along with others. *Id*.

Finally, the opinion of the state agency medical consultant was given some probative weight because it was generally consistent with the weight of the objective medical findings and because the consultant was an expert in physical medicine and familiar with SSA disability rules and regulations. *Id*.

Based on the aforementioned evidence, the ALJ concluded that Ms. Claussen had the following RFC: she could perform light work, lifting up to 20 pounds occasionally and ten pounds frequently; standing/walking up to 6 hours in an eight-hour workday, and no exposure to extremes of temperature (defined as more than 90 degrees or less than 32 degrees). (R. 14.) Based on Ms. Claussen's RFC, the ALJ determined that she was still able to perform her past relevant work as a kitchen administrator. (R. 17.)

Consequently, per 20 C.F.R. § 404.1520(f), the ALJ concluded that the claimant was not under a disability, as defined in the Social Security Act, from July 20, 2005, through the date of the decision. *Id*.

### III.  STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42

U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently. *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. Therefore, our review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

16

## IV.   CONCLUSIONS OF LAW

The issue on appeal is whether Ms. Claussen is entitled to disability benefits beginning on July 20, 2005. The ALJ's decision at the fourth step of the analysis forms the basis for the parties' cross-motions for summary judgment. After a review of the entire record, this Court concludes that the ALJ's findings at each step of the sequential analysis were supported by substantial evidence in the record as a whole. Therefore, Ms. Claussen is not entitled to Social Security Disability benefits from July 20, 2005 through the ALJ's decision.

### A.  Applicable Law

Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In making a disability determination, the ALJ must analyze a sequential evaluation process which applies to both physical and mental disorders. Title 20, Section 404.1520 of the Code of Federal Regulations outlines the five-step sequential process used by the ALJ to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The disability determination requires a step-by-step analysis. *See* 20 C.F.R.§ 404.1520(a). At the first step, the ALJ must consider the claimant's work history. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). At the third step, the ALJ must consider whether the claimant has an impairment or impairments that meet or equal one of the listings in Appendix 1 to Subpart P of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ

17

must make an assessment of the claimant's RFC and the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant can still perform his or her past relevant work, the ALJ will find that the claimant is not disabled. 20 C.F.R. § 404.1520(f).

Ms. Claussen raises three issues on appeal. First, she contends that the ALJ improperly weighed the opinions of her treating and non-examining physicians because the ALJ failed to follow the treating physician rule. Second, Ms. Claussen argues that the ALJ failed to properly assess her subjective complaints of pain. Consequently, her third point of error relates to the ALJ's finding that Ms. Claussen could return to her past work.

### B. The ALJ reasonably weighed the medical opinions of Dr. Hathaway and Dr. Salmi.

Ms. Claussen argues that the ALJ failed to properly weigh the opinions of her treating physician, Dr. Hathaway, and the non-examining state agency physician, Dr. Salmi. She challenges the minimal weight that was given to Dr. Hathaway's disability assessment as described in the April 2009 rheumatoid arthritis impairment questionnaire and, conversely, the greater weight that was given to Dr. Salmi's physical RFC in the Request for State Agency Consultant Advice. (R. 411, 440).

### 1. The ALJ reasonably considered and weighed Dr. Hathaway's medical opinion.

The ALJ chose to give Dr. Hathaway's medical opinion, as documented in the disability assessment, very little probative weight for two reasons: the opinion was generally inconsistent with Dr. Hathaway's own treatment notes, (R. 16-17), and his medical opinion regarding work limitations was largely based on Ms. Claussen's subjective complaints of pain. *Id.*

18

Special considerations apply to the medical opinions of treating physicians. Generally, a treating physician's opinion is entitled to substantial weight. 20 C.F.R. § 404.1527(d)(2). If it is found "that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). An ALJ, however, may decline to give a treating physician's opinion controlling weight where it is "based largely on [the patient's] subjective complaints with little objective medical support," and is inconsistent with the record as a whole. *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005). Furthermore, the opinion of a treating physician based solely on the plaintiff's complaints is entitled to little weight. *Woolf*, 3 F.3d at 1214 (acknowledging that a doctor's conclusion of disability relying solely on plaintiff's subjective complaints of pain is subject to little weight).

The ALJ found that Dr. Hathaway did not cite to any objective medical findings in making his disability assessment. (R. 17.) In fact, in his assessment, Dr. Hathaway noted that Ms. Claussen had not exhibited "swollen joints in years." (R. 442.) Though he noted that Ms. Claussen exhibited positive trigger points, presumably to support a diagnosis of fibromyalgia, he failed to indicate their number and location with any specificity. (R. 441.) When asked to indicate laboratory tests which supported his diagnosis, he noted negative results for ANA and rheumatoid arthritis. (R. 441.) Furthermore, when asked to indicate specific clinical findings supporting the work-related limitations, Dr. Hathaway indicated no reduced ranges of motion, tenderness, redness, swelling, or muscle weakness. (R. 441.) This is consistent with his treatment

notes from prior visits which indicate "stable rheumatoid arthritis" under "excellent control." (R. 386, 398, 485, 487, 556).

Instead, the opinion relies upon the frequency and intensity of Ms. Claussen's reported pain. (R. 443-44). Limitations on lifting, carrying, sitting, and standing are undocumented in his four years of treatment outside of Ms. Claussen's subjective reports of being fatigued after working for more than four hours. (R. 285.) Dr. Hathaway in fact noted that Ms. Claussen's symptoms and functional limitations were not reasonably consistent with the rheumatoid arthritis and fibromyalgia described in the evaluation, stating that the "symptoms [were] greater [than] the findings." (R. 442.)

Substantial evidence supports the ALJ's conclusion that Dr. Hathaway's medical opinion as to Ms. Claussen's work-related limitations is not entitled to controlling weight and should be accorded little probative weight because it is not supported by objective medical evidence, is inconsistent with Dr. Hathaway's own treatment notes regarding Ms. Claussen's rheumatoid arthritis and relies almost exclusively on her subjective complaints. Accordingly, the ALJ did not err in granting Dr. Hathaway's medical opinion little probative weight.

## 2. The ALJ reasonably considered and weighed Dr. Salmi's medical opinion.

The ALJ considered the opinion of the state agency physician, Dr. Salmi, and gave the opinion some probative weight because it was consistent with the weight of the objective medical findings and because Dr. Salmi is an expert in physical medicine. (R. 17.) The ALJ further noted that though Dr. Salmi had reviewed a limited medical record, subsequent objective

medical findings entered into evidence were not significantly different than those considered by Dr. Salmi in March of 2008. (R. 17.)

"[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). State agency physicians in particular are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i).

Dr. Salmi based his opinion on records from Dr. Hathaway dated November of 2007 and March of 2008. (R. 411.) Though this was a limited record, his findings of effective treatment for rheumatoid arthritis, minimal joint swelling, and Ms. Claussen's reported stiffness in the hands and feet, are consistent with Dr. Hathaway's objective medical findings which include little, if any, indication of limited movement. Furthermore, no significant changes in the objective medical evidence were noted from Ms. Claussen's subsequent visits to Dr. Hathaway in 2008 and 2009. (R. 440, 485, 556.)

Consequently, substantial evidence supports the ALJ's finding that Dr. Salmi's medical opinion was entitled some probative weight because the limited record reviewed was not substantially different from the other medical evidence available, and his findings were consistent with the weight of the objective medical evidence.

**C.  The ALJ reasonably evaluated Ms. Claussen's credibility.**

Ms. Claussen challenges the ALJ's finding of credibility on the basis that the ALJ's application of the *Polaski* factors was inadequate.

In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ, however, need not explicitly discuss each factor. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (quoting *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)). "It is sufficient if [s]he acknowledges and considers [the] factors before discounting a claimant's subjective complaints." *Id*. Furthermore, "[reviewing courts] defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

The ALJ listed each of the factors she would consider as part of her credibility assessment. (R. 15.) She explicitly considered Ms. Claussen's daily activities, her depression and apparent decision not to seek treatment, the excellent treatment of her rheumatoid arthritis, her work history, and the lack of swollen joints or other objective medical evidence of untreated arthritis. (R. 15-16.) The ALJ further noted Ms. Claussen's report to Dr. Hathaway that she had heard receiving disability on the basis of depression is more likely than based on fibromyalgia. (R. 16, 556.)

Ms. Claussen specifically claims the ALJ erred in incorrectly inferring a lack of disability based on Ms. Claussen's reported daily activities and inappropriately focusing on rheumatoid arthritis rather than fibromyalgia as the possible cause of her subjective complaints of pain.

### 1. The ALJ reasonably considered Ms. Claussen's daily activities as evidence that her subjective complaints of pain were not credible.

Ms. Claussen first challenges the adverse credibility finding on the grounds that her reported daily activities are not inconsistent with severe and debilitating pain sufficient for a finding of disability.

"Acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Craig*, 212 F.3d at 436; *see also Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (finding that daily activities such as reading, cleaning the house, making the bed, doing dishes with assistance, and occasionally shopping and running errands as inconsistent with the disabling level of pain alleged).

The ALJ specifically considered daily activities which were inconsistent with the reported severity of Ms. Claussen's impairments. (R. 16.) These activities included routinely doing household chores, driving, engaging in activities with grandchildren, getting along well with others, and doing family genealogy as a hobby. *Id.* Substantial evidence in the record supports these findings. According to her testimony, Ms. Claussen continues to occasionally help her husband with the bills. (R. 28.) She continues to prepare at least one meal per day and regularly visits her mother. (R. 36, 39). This testimony was consistent with Ms. Claussen's own functional report where she indicated regularly cooking meals, doing laundry and cleaning, and going grocery and clothes shopping. (R. 163-67.) Furthermore, Ms. Claussen indicated in her visit with the state physician, Dr. Davidson, that she routinely does household chores, visits her

children and grandchildren, engages in hobbies such as genealogy and crafts, and gets along well with people. (R. 404.)

"[A] claimant need not prove she is bedridden or completely helpless to be found disabled." *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989). Daily activities, however, are but one factor considered as part of a credibility finding. In this case, regular cooking of meals, visiting with others, and doing household chores all support the ALJ's finding that Ms. Claussen's daily activities are inconsistent with her complaints of debilitating pain.

### 2. The ALJ reasonably focused on rheumatoid arthritis as the source for Ms. Claussen's subjective complaints of pain rather than fibromyalgia.

Ms. Claussen also challenges the ALJ's credibility assessment on the grounds that the ALJ inappropriately focused on rheumatoid arthritis as the possible source for the subjective complaints of pain rather than fibromyalgia.

"Fibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points." *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003) (citing the 1990 American College of Rheumatology standards); *see also Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996). "[N]ot every diagnosis of fibromyalgia warrants a finding that a claimant is disabled." *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011).

Elsewhere in her opinion, the ALJ noted that although Dr. Hathaway on several occasions had indicated fibromyalgia as a possible diagnosis, the record shows no objective medical findings supporting this diagnosis. (R. 11-12.) In fact, the only examination on record for fibromyalgia was conducted by Ms. Claussen's primary care physician, Dr. Charles Dunham,

in 2005 and he found only one borderline positive tender point and "doubt[ed]" a diagnosis of fibromyalgia. (R. 255.)

Furthermore, the record contains no evidence that Ms. Claussen was being treated for fibromyalgia. Dr. Koch diagnosed her with fibromyalgia and hyperlipemia in an October 2007 visit. One year later, however, in October of 2008, he noted only hyperlipemia and hypothyroidism. (R. 321, 452.) In October of 2009, Dr. Hathaway noted that "ongoing pain and disability is not related to rheumatoid arthritis." (R. 556.) He suggested that depression and fibromyalgia were likely the source of her remaining symptoms of pain and depression. *Id*. In his plan, he suggested several antidepressant and pain modulating drugs to treat the fibromyalgia, but acknowledged his limitations as a rheumatologic specialist and ultimately reserved treatment of fibromyalgia to Ms. Claussen's primary care, psychiatry or pain management physicians. *Id*. There is no evidence that suggests she subsequently received or pursued this treatment with her primary care physician.

Substantial evidence supports the ALJ's decision to focus on rheumatoid arthritis as the possible source for Ms. Claussen's subjective complaints of pain rather than fibromyalgia. The ALJ noted elsewhere in her decision that fibromyalgia was never diagnosed according to the elven trigger-point test, there is no evidence of treatment for fibromyalgia, and Dr. Hathaway's notes as well as Dr. Dunham's evaluation support this conclusion.

Substantial evidence therefore supports the ALJ's adverse finding of credibility because all of the *Polaski* factors were acknowledged and considered, the ALJ could reasonably find that Ms. Claussen's daily activities were inconsistent with disabling pain, and the ALJ did not err by focusing on rheumatoid arthritis as a source for Ms. Claussen's complaints of debilitating pain.

### D.  The ALJ reasonably found the plaintiff could return to her previous work.

Ms. Claussen finally argues that the ALJ erred in finding that Ms. Claussen could return to her previous work as a kitchen administrator because the ALJ posed an incomplete hypothetical to the Vocational Expert.

"A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." *Perkins*, 648 F.3d at 901-02 (quoting *Goff*, 421 F.3d at 794). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Id*. at 902 (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)). However, "the ALJ may exclude any alleged impairments that [she] has properly rejected as untrue or unsubstantiated." *Id.*

The limitations Ms. Claussen sought to include were those described by Dr. Hathaway in his disability assessment. (R. 443.) These limitations included ten minute work breaks taken every hour, absences from work in excess of three times a month, an inability to sit for more than three hours a day, and an inability to stand for more than three hours a day. (R. 443-45.) As previously discussed, the ALJ gave little probative weight Dr. Hathaway's opinion regarding Ms. Claussen's physical limitations because it relied largely on her subjective complaints of pain.

The ALJ did not err in discounting the limitations in Dr. Hathaway's report because as previously noted, she found Ms. Claussen's subjective complaints of pain and self-reported limitations lacking in credibility. As such, she was not required to include them in the RFC. The RFC included all limitations the ALJ found credible.

Ms. Claussen concedes that the RFC determined by the ALJ was consistent with the past demands of Ms. Claussen's work as a kitchen administrator. As such, the ALJ properly found

that Ms. Claussen was capable of performing her prior work as a kitchen administrator and did

not find her "disabled" within the definition of 20 C.F.R. § 404.1505(a).

## V.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Plaintiff's Motion for Summary Judgment (ECF No. 6) be **DENIED**;

2.      Defendant's Motion for Summary Judgment (ECF No. 9) be **GRANTED**;

3.      The Commissioner's decision be **AFFIRMED** and the case **DISMISSED WITH PREJUDICE**; and

4.      **JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: December 20, 2011                          _s/ Franklin L. Noel_

                                                 FRANKLIN L. NOEL

                                                 United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing

with the Clerk of Court and serving on all parties, on or before **January 3, 2012,** written

objections which specifically identify the portions of the proposed findings or recommendations

to which objection is being made, and a brief in support thereof.  A party may respond to the

objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall

be limited to 3500 words.  A judge shall make a de novo determination of those portiosn to

which objections is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.